## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**GERALD T. WALDEN**,

    Petitioner,

v.                                        Case No. 8:20-cv-551-WFJ-JSS

**SECRETARY, DEPTARTMENT
OF CORRECTIONS**,

    Respondent.

_____/

## ORDER

Before the Court is Gerald T. Walden's ("Petitioner") Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Dkt. 1). Secretary, Florida Department of Corrections ("Respondent") has responded in opposition (Dkt. 15). Upon careful review, the Court finds an evidentiary hearing unnecessary and denies Petitioner any relief.

## BACKGROUND

On May 31, 2017, the State Attorney in Hillsborough County, Florida, charged Petitioner with possession of cocaine (Count I), possession of a controlled substance (Count II), and soliciting another to commit prostitution (Count III) after Petitioner was arrested in a reverse prostitution sting conducted by Tampa Police Department ("TPD"). Dkt. 16-2 at 16, 259. Petitioner pled not guilty and went to

trial. On September 26, 2017, a jury found Petitioner guilty on all three counts. *Id.* at 27. The trial court sentenced Petitioner to five years' imprisonment on Count I, five years' imprisonment on Count II (consecutive), and time served on Count III. *Id.* at 72.

On November 1, 2017, Petitioner filed a notice of direct appeal. *Id.* at 91–93. Petitioner effectively made three challenges: (1) trial counsel failed to file a motion to suppress evidence, amounting to ineffective assistance of counsel; (2) the trial court fundamentally erred when it failed to properly instruct the jury; and (3) alternatively, trial counsel provided ineffective assistance by allowing the trial court to give incomplete jury instructions without objection. *Id.* at 427, 433–35. The state appellate court *per curiam* affirmed Petitioner's conviction on March 29, 2019. *Id.* at 451. Petitioner did not seek certiorari.

On March 5, 2020, Petitioner, proceeding *pro se*, filed a motion for postconviction relief. *Id.* at 456. Petitioner initially made two claims: (1) Petitioner was denied his right to be present during a portion of his trial (and to effective assistance of counsel based on trial counsel's failure to secure his presence), and (2) Petitioner received ineffective assistance of counsel when trial counsel failed to object to the trial court's departure from Florida's sentencing guidelines. *Id.* at 461–66. Shortly thereafter, Petitioner filed amended motions and supplementary briefing that altered his original postconviction claims and added an additional one. *Id.* at

2

483–495, 524. The postconviction court summarily denied Petitioner's latter motions and dismissed his initial filing on February 8, 2021. *Id.* at 574. On February 18, 2021, Petitioner filed a motion for rehearing on his postconviction relief motions, *id.* at 743, which was later denied, *id.* at 751.

On March 16, 2021, Petitioner filed an appeal of the postconviction court's ruling. *Id.* at 774. The appellate court *per curiam* affirmed on February 11, 2022. *Id.* at 803. Petitioner moved for a rehearing and requested a written opinion to no avail. *Id.* at 805, 816. Petitioner finally filed a petition for writ of habeas corpus pursuant to Rule 9.100 Florida Rules of Appellate Procedure, *id.* at 820, but it was ultimately dismissed as untimely. *Id.* at 829.

On June 25, 2021, while the proceedings on Petitioner's first set of motions for postconviction relief were unfolding, Petitioner filed another motion for postconviction relief. *Id.* at 832. Therein, Petitioner asserted one ground for relief based fundamental error concerning the trial court's failure to instruct the jury on an affirmative defense as an essential element of Count II. *Id.* at 837. The postconviction court dismissed this claim on July 30, 2021, noting Petitioner's failure to preserve it on direct appeal. *Id.* at 868. Petitioner's subsequent motion for a rehearing was denied, *id* at 925, and the appellate court *per curiam* affirmed. *Id.* at 991. Petitioner was not granted a rehearing or written opinion. *Id.* at 1004.

On March 9, 2020, Petitioner timely filed the instant Petition for Writ of Habeas Corpus. Dkt. 1. The Court granted a stay pending Petitioner's state court proceedings. Dkt. 5. The Court lifted the stay on March 7, 2022. Dkt. 10.

Petitioner asserts four grounds for relief: (I) trial counsel was ineffective for failing "to file a motion to suppress evidence"; (II) "the trial court erred when it failed to properly instruct the jury"; (III) trial counsel was ineffective for not objecting "to the trial court's failure to follow federal precedent that Petitioner has a constitutional right to be present during all stages of trial"; and (IV) trial counsel was ineffective for failing "to object to the trial court's failure to follow [Florida's] sentencing guidelines[.]" Dkt. 1 at 5–21. Respondent argues that Petitioner is not entitled to relief on any of the above stated grounds. Dkt. 15 at 1.

## LEGAL STANDARDS

This petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Wilcox v. Fla. Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir. 1998). The AEDPA "establishes a highly deferential standard for reviewing state court judgments." *Parker v. Sec'y for Dep't of Corr.*, 331 F.3d 764, 768 (11th Cir. 2003). This type of review does not allow relief of a state court conviction on a claim "that was adjudicated on the merits in the State court proceedings" unless the state court's decision was "(1) . . . contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court

of the United States; or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Nejad v. Att'y Gen., State of Ga.*, 830 F.3d 1280, 1288 (11th Cir. 2016) (quoting 28 U.S.C. § 2254(d)).

"Clearly established Federal law" means holdings of the U.S. Supreme Court "as of the time of the relevant state-court decision." *Id.* at 1288–89. "Contrary to" requires a state court conclusion "opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Id.* at 1289 (citations omitted) (alterations in original). The "unreasonable application" clause applies only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* (citation omitted) (alterations in original).

A state court's factual determination "is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Id.* (citation omitted). Indeed, "even if reasonable minds reviewing the record might disagree about the [fact] finding in question, on habeas review that does not suffice to supersede the [state] trial court's determination." *Wood v. Allen*, 558 U.S. 290, 301 (2010) (internal quotation omitted). Further, this standard applies even if the state court does not provide the reasoning behind its decision because "the summary nature of a state court's decision does not lessen the deference that it is

due." *Wright v. Sec'y for Dep't of Corr.*, 278 F.3d 1245, 1254 (11th Cir. 2002). Only if this Court determines that the state court's adjudication of Petitioner's claim was unreasonable under § 2254(d) must a *de novo* review of the record be undertaken. *See McGahee v. Ala. Dep't of Corr.*, 560 F.3d 1252, 1266 (11th Cir. 2009).

## DISCUSSION

The Court begins by addressing Petitioner's ineffective assistance of counsel claims (Grounds I, III, and IV). Counsel is ineffective under the Sixth Amendment if "(1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense such that petitioner was deprived of a fair trial." *Dill v. Allen*, 488 F.3d 1344, 1354 (11th Cir. 2007) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). A petitioner claiming ineffective assistance of counsel carries the burden of establishing both prongs. *Strickland*, 466 U.S. at 687.

To establish deficient assistance under *Strickland*, a petitioner must demonstrate that counsel's performance "fell below an objective standard of reasonableness." *Id.* at 688. The test is not "what the best lawyers" or "what most good lawyers would have done." *White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir. 1992). Rather, the question is "whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial." *Id.*

To establish resulting prejudice under *Strickland*, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* If the petitioner fails to establish either of the *Strickland* prongs, his claim fails. *See Maharaj v. Sec'y, Dep't of Corr.*, 432 F.3d 1292, 1319 (11th Cir. 2005).

Notwithstanding the highly deferential standard posed by *Strickland*, "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Harrington v. Richter*, 562 U.S. 86, 105 (2011). In the habeas context, "[t]he question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citation and internal quotation marks omitted). "If there is 'any reasonable argument that counsel satisfied *Strickland's* deferential standard,' then a federal court may not disturb a state-court decision denying the claim." *Hittson v. GDCP Warden*, 759 F.3d 1210, 1248 (11th Cir. 2014) (citation omitted).

"[I]t is a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding . . . [I]t is rarer still for merit to be found in a claim that challenges a

strategic decision of counsel." *Nance v. Warden, Ga. Diagnostic Prison*, 922 F.3d 1298, 1303 (11th Cir. 2019) (internal citations omitted). A strategic decision by counsel is only subject to federal habeas review when it was so "patently unreasonable that no competent attorney would have chosen it." *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983). "If this standard is difficult to meet, that is because it was meant to be." *Harrington*, 562 U.S. at 102.

## I.      Ground I

In Ground I, Petitioner argues that trial counsel was ineffective for failing to file a motion to suppress evidence in the form of drugs found in Petitioner's backpack subsequent to his arrest. Dkt. 1 at 5–9. Petitioner raised this argument on direct appeal, Dkt. 16-2 at 427, and the state appellate court denied it by affirming Petitioner's conviction *per curiam*. *Id.* at 451. The Court therefore presumes that the state appellate court adjudicated Ground I on the merits, as Petitioner has presented no "other explanation for the state court's decision"—let alone one that "is more likely." *Harrington*, 562 U.S. at 99–100.

In the absence of an opinion from the state appellate court, the Court "must determine what arguments or theories could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding of a prior decision of [the Supreme Court]." *Cullen v. Pinholster*, 563 U.S. 170, 188 (2011) (cleaned

up) (citations and internal quotations omitted). Petitioner "can satisfy the 'unreasonable application' prong of § 2254(d)(1) only by showing that 'there was no reasonable basis'" for the state appellate court's decision. *Id.* (citations omitted).

Petitioner cannot make the required showing here because a reasonable basis exists for the state appellate court's decision; namely, the Fourth Amendment claim underlying Petitioner's Ground I ineffective assistance claim is meritless. On the day of Petitioner's arrest, TPD was engaged in an undercover reverse prostitution sting. Dkt. 16-2 at 254. Corporal Kimberly Hill, the TPD officer posing as a prostitute for the operation, was standing on a street corner when Petitioner began interacting with her. *Id.* at 259–60. Petitioner eventually solicited Corporal Hill for sex. *Id.* at 260–61. Corporal Hill gave the take down signal, and her TPD backup arrested Petitioner. *Id.* at 259. He was wearing a black backpack at the time. *Id.* at 273. After Petitioner's arrest, Officer Edward J. Knappenberger performed a routine search of Petitioner's backpack. *Id.* He found a folded bank envelope containing cocaine crack rock and a clear baggy containing pills that were later identified as unprescribed alprazolam. *Id.* at 275. Officer Knappenberger placed the drugs in sealed containers before sending them off for testing. *Id.* at 276.

These facts do not indicate an unlawful search that could be subject to proper suppression under the Fourth Amendment. As the Supreme Court recognized long ago, "inventory searches are now a well-defined exception to the warrant

requirement of the Fourth Amendment[,]" *Colorado v. Bertine*, 479 U.S. 367, 371 (1987) (citation omitted), and "an inventory search may be 'reasonable' under the Fourth Amendment . . . based upon probable cause" alone if officers act in good faith. *Id.* Here, as in multiple Supreme Court cases upholding the constitutionality of inventory searches, there is no evidence "that the police, who were following standardized procedures, acted in bad faith or for the sole purpose of investigation." *Id.* at 372; *see South Dakota v. Opperman*, 428 U.S. 364 (1976) (upholding the constitutionality of a routine inventory search of an impounded car); *Illinois v. Lafayette*, 462 U.S. 640 (1983) (upholding the constitutionality of an inventory search of a shoulder bag after the bag's owner had been arrested). Petitioner had been lawfully arrested and was about to be transported, along with his property, to jail. Thus, just as in *Lafayette*, there was a danger of introducing contraband or weapons into a jail facility. 462 U.S. 640, 645–46. And the legitimate governmental interest in avoiding this alone outweighs Petitioner's Fourth Amendment interests, rendering the warrantless search of his backpack reasonable.

It follows that Petitioner's trial counsel did not provide ineffective assistance of counsel by failing to file a suppression motion. It is widely recognized that "[c]ounsel cannot be labeled ineffective for failing to raise issues which have no merit." *Card v. Dugger*, 911 F.2d 1494, 1520 (11th Cir. 1990) (citation omitted). Failing to raise issues which have no merit, moreover, cannot prejudice a petitioner.

In sum, Petitioner has failed to establish either *Strickland* prong or demonstrate that the state appellate court unreasonably applied *Strickland* under § 2254(d) in relation to Ground I. Petitioner is entitled to no relief on this claim.

## II.   Ground III

In Ground III, Petitioner argues that trial counsel rendered ineffective assistance "when he fail[ed] to object to the trial court's failure to follow federal precedent that Petitioner has a constitutional right to be present during all stages of trial[.]" Dkt. 1 at 16.[1] The Court disagrees.

In ruling on Ground III, the postconviction court found the following:

> The Court finds [this claim] to be without merit. Consistent with [Petitioner's] allegations, the record reflects that after the jury began deliberating, it came to the attention of the court that standard instructions 3.10 and 3.11 were not read to the jury and not included in the jury instruction packet. The attorneys discussed with the court what action should be taken and it was agreed the court would submit the two instructions to the jury with a note informing the jury that, "These two jury instructions were inadvertently left out of your packet and were not read to you by the Court. Please read the instructions as they are part of the law on this case." The record reflects that [trial] counsel waived his client's presence during these discussions. Also[,] as [Petitioner] alleges, the record reflects [Petitioner] was informed of what happened immediately before the jury was brought back in with

---

[1] Respondent appears to argue that Ground III is unexhausted and therefore procedurally barred because Petitioner failed to "present the federal constitutional dimension" of this claim on direct appeal. Dkt. 15 at 27. The Court finds that Petitioner did alert the state postconviction court that he was raising a federal claim in his motions for post-conviction relief. *See* Dkt. 16-2 at 485; *Baldwin v. Reese*, 541 U.S. 27, 32 (2004) ("A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'). Further, the state postconviction court addressed this claim on the merits. The Court will do the same.

its verdict. The record reflects that the jury instruction packet contains the two instructions initially omitted included as the last two pages of the instructions.

The Court finds that in light of the record indicating the jury was given the two missing instructions, [Petitioner] cannot demonstrate prejudice. If counsel had objected to any action being taken in [Petitioner's] absence, and if [Petitioner's] presence had been secured and he insisted on the jury being brought into the courtroom to be orally instructed before receiving the written instructions, the resulting situation would have been the same—namely, the jury would have received standard instructions 3.10 and 3.11. The Court finds that because the instructions were delivered to the jury together with a hand-written note from the judge, these instructions were specifically brought to the jury's attention. Thus, the Court finds that where the instructions were specifically brought to the jury's attention, orally instructing the jury would not have put such additional emphasis on these standard instructions to the point that a different verdict would have been reached. Accordingly, relief is not warranted on claim one of Defendant's June 26, 2020 motion.

Dkt. 16-2 at 567–68 (in-text citations omitted). The postconviction appellate court *per curiam* affirmed. *Id.* at 803.

This was not an unreasonable application of *Strickland*. As noted above, to establish resulting prejudice under *Strickland*, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. In the AEDPA context, moreover, "[t]he question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Mirzayance*, 556 U.S. at 123 (citation and internal quotation marks omitted). Here, the

postconviction court reasonably determined (based on an extensive review of the record) that there was no prejudicial impact stemming from Petitioner's absence during the trial court's discussion of the jury instruction issue because his presence— or hypothetical insistence on an oral reading—would not have resulted in "such additional emphasis . . . that a different verdict would have been reached." Dkt. 16-2 at 568. In other words, the postconviction court determined that the probability of an oral reading impacting the jury's verdict was not a "probability sufficient to undermine confidence in the outcome" of Petitioner's trial. *Strickland*, 466 U.S. at 694. This finding was neither contrary to the record, nor a misapplication of federal law.

Petitioner's conclusory arguments to the contrary are unavailing. *See* Dkt. 1 at 18. Florida Standard Jury Instructions 3.10 and 3.11 respectively provide "Rules for Deliberation" and "Cautionary Instruction." There is no reason to believe that the jury would fail to read, understand, or follow them simply because they were not orally read. If anything, these instructions were specifically highlighted and emphasized by being separately delivered with a handwritten note from the trial judge. The Court also notes that Petitioner provides no support for the notion that a different verdict would have been reached had these instructions been provided otherwise. Without this, Petitioner cannot meet his burden of establishing prejudice

under *Strickland* or his burden of demonstrating an unreasonable application thereof. Petitioner is entitled to no relief on Ground III.

## III.    Ground IV

In Ground IV, Petitioner maintains that trial counsel was ineffective for not "object[ing] to the trial court's failure to follow [Florida's] sentencing guidelines[.]" Dkt. 1 at 21. Respondent argues that this claim is (1) unexhausted because Petitioner previously raised this issue only in the context of trial court error, and (2) procedurally defaulted because the state court remedies Petitioner failed to exhaust are no longer available. Dkt. 15 at 34. The Court agrees.

Before a federal court can grant habeas relief, a petitioner must exhaust every available state court remedy for challenging his conviction, either on direct appeal or in a state post-conviction motion. 28 U.S.C. § 2254(b)(1)(A), (C).  This is because a "state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *see also Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (citations omitted). To exhaust a claim, a petitioner merely must present the state court with both the particular legal basis for relief and the facts supporting the claim. *See Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998)

("Exhaustion of state remedies requires that the state prisoner 'fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'")

Upon careful review of the record, Petitioner's operative postconviction relief motions did not raise an ineffective assistance of counsel claim in relation to any sentencing issue.[2] Petitioner instead argued that the "trial court erred in finding that it lacked discretion to grant [Petitioner's] request for a downward departure sentence pursuant to [Florida law]." Dkt. 16-2 at 495. Petitioner has therefore failed to exhaust his state court remedies. The time for doing so, moreover, has long since passed.

"If [a] petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). Petitioner carries the burden of establishing any exception. *Id.* at 1139. Here, Petitioner has not attempted to establish either cause and prejudice or a fundamental miscarriage of justice. Accordingly, Petitioner's procedural default is a bar to federal habeas relief for Ground III.

---

[2] The Court notes that Petitioner did raise this issue in his March 9, 2020 motion for postconviction relief. Dkt. 16-2 at 456. Notwithstanding, the postconviction court found that, "[a]s [Petitioner's second motion amends the claims included in his first motion, [Petitioner's] March 9, 2020 motion is dismissed." *Id.* at 565. The state postconviction appellate court then *per curiam* affirmed the lower state court's dismissal. *Id.* at 803. The ineffective assistance claim contained in Ground IV was therefore never put before the state postconviction court for consideration. It is unexhausted.

## IV.    Ground II

Finally, in Ground II (which is related to Ground III), Petitioner argues that the trial court erred when it failed to properly instruct the jury prior to deliberations. Dkt. 1 at 11. This issue was raised on direct appeal, Dkt. 16-2 at 443, and the state appellate court denied it by affirming Petitioner's sentence *per curiam*. *Id.* at 451. In the appellate proceedings, the State argued that this issue was not properly before the court because it was unpreserved at trial, *id.* at 447, and that, alternatively, the court's actions did not raise to the level of a fundamental error, *id.* at 448.

As an initial matter, the Eleventh Circuit "has presumed that when a procedural default is asserted on appeal and the state appellate court has not clearly indicated that in affirming it is reaching the merits, the state court's opinion is based on the procedural default." *Bennett v. Fortner*, 863 F.2d 804, 807 (11th Cir. 1989) (citations omitted). This is the case here. The State asserted procedural default and the state appellate court issued a silent affirmance—effectively failing to indicate whether it was reaching the merits. The Court must therefore presume that the state appellate court's opinion was based on the state law-based procedural default asserted by the State.

That being the case, Ground II is due to be denied. "It is a maxim well rooted in our federalist system that federal courts will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that

16

is independent of the federal question and adequate to support the judgment." *Eagle v. Linahan*, 279 F.3d 926, 936 (11th Cir. 2001) (citation and internal quotations omitted). Florida's procedural default rules are independent of any federal question here and adequate to support the state appellate court's decision. Indeed, thereunder, "[i]ssues pertaining to jury instructions are not preserved for appellate review unless a specific objection has been voiced at trial, and absent an objection at trial, can be raised on appeal only if fundamental error occurred." *Lawrence v. State*, 831 So. 2d 121, 137 (Fla. 2002) (citation omitted).[3] Petitioner did not raise this trial court error argument at trial. The appellate court's decision as it pertains to the claim Petitioner now raises is therefore adequately supported by Florida law. The Court will not disturb it.[4]

## V.     Evidentiary Hearing and Certificate of Appealability

---

[3] The Court's analysis concerning this issue would not change if the Court presumed that the state appellate court denied Petitioner's direct appeal solely on the alternative grounds raised by the State (i.e., that there was no fundamental error). Under Florida law, "[f]undamental error is defined as the type of error which reaches down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error." *Lawrence*, 831 So. 2d. at 137 (citations omitted). As explained in the Court's analysis of Ground III, the trial court's jury instruction error was cured and did not impact the validity of the verdict in Petitioner's trial.

[4] Petitioner's Petition might be interpreted as indirectly arguing that, if there was a procedural default of this claim, it was because trial counsel failed to raise it. *See* Dkt. 1 at 14. "[A]ttorney error is cause for procedural default only if the error rises to the level of constitutionally deficient assistance of counsel under the Sixth Amendment. *Eagle*, 279 F.3d at 937 (citation omitted). Petitioner cannot meet the burden of establishing that this is the case. As explained above, Petitioner was not prejudiced by the trial court's failure to read two jury instructions orally that were then provided to the jury with a handwritten note. If a petitioner fails to establish either of the *Strickland* prongs, as here, his claim fails. *See Maharaj*, 432 F.3d at 1319.

In light of the foregoing analysis, an evidentiary hearing in this matter is unnecessary. "A petitioner is entitled to an evidentiary hearing if he alleges facts that, if true, would entitle him to relief." *Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) (internal quotations and citations omitted). Notwithstanding, "a district court is not required to hold an evidentiary hearing where the petitioner's allegations are affirmatively contradicted by the record, or the claims are patently frivolous[.]" *Aron v. United States*, 291 F.3d 708, 715 (11th Cir. 2002) (citation omitted). Here, Petitioner's claims are meritless or contradicted by the record. As a result, summary dismissal is appropriate. *See Broadwater v. United States*, 292 F.3d 1302, 1303 (11th Cir. 2002) (finding that "a district court faced with a § 2255 motion may make an order for its summary dismissal [i]f it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief").

Petitioner is similarly not entitled to a certificate of appealability ("COA"). "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant[,]" and if a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Rule 11(a), Rules Governing Section 2254 Proceedings for the United States District Courts; *see Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). To merit a COA, Petitioner must show that reasonable jurists would find debatable both the

merits of the underlying claims and the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Eagle*, 279 F.3d at 935. Because he fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, Petitioner is not entitled to either a COA or leave to appeal *in forma pauperis*.

Accordingly, a certificate of appealability is denied. Leave to appeal *in forma pauperis* is denied. Petitioner must obtain permission from the circuit court to appeal *in forma pauperis*.

## CONCLUSION

Accordingly, it is hereby **ORDERED** and **ADJUDGED**:

(1) Petitioner's Petition for Writ of Habeas Corpus (Dkt. 1) is **DENIED**.

(2) A certificate of appealability and leave to appeal *in forma pauperis* is **DENIED**.

(3) The Clerk is directed to enter judgment in favor of Respondent and close this case.

**DONE AND ORDERED** at Tampa, Florida, on July 19, 2023.

*/s/ William F. Jung*_____
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

<u>**COPIES FURNISHED TO**</u>:
Counsel of Record
Petitioner, *pro se*

19